Magistrate Judge Grady J. Leupold

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>LINDSAY ANNE MOFFATT,<br><br>Defendant(s). | CASE NO. MJ26-001<br><br>COMPLAINT for VIOLATION<br><br>Title 18 U.S.C. § 111(a)<br>(Assault on a Federal Officer), and<br>Title 8 U.S.C. § 1325(a)(1)<br>(Improper Entry by Alien) |

BEFORE, the Honorable Grady J. Leupold, United States Magistrate Judge, U. S. Courthouse, Seattle, Washington.

The undersigned complainant being duly sworn states:

### COUNT ONE

### Assault on a Federal Officer

On or about December 30, 2025, in Whatcom County, within the Western District of Washington, LINDSAY MOFFATT did knowingly and forcibly assault, resist, oppose, impede, intimidate, and interfere with Victim 1, an officer of the United States and of an agency of the United States Government, that is, the United States Border

Complaint - 1
*United States v. Lindsay Moffatt* /MJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Patrol (USBP), while Victim 1 was engaged in and on account of her performance of official duties, and such assault caused physical contact and inflicted bodily injury to Victim 1.

All in violation of Title 18, United States Code, Section 111(a).

## COUNT TWO

### (Improper Entry by Alien)

On or about December 30, 2025, in Whatcom County, within the Western District of Washington, LINDSAY MOFFATT, an alien, a native and citizen of Canada, knowingly entered the United States at a time and place other than as designated by immigration officers.

All in violation of Title 8, United States Code, Section 1325(a)(1).

And the complainant states that this Complaint is based on the following information:

I, Sara Blond, a Special Agent with the Federal Bureau of Investigation (FBI), headquartered in Seattle, Washington, having been duly sworn, state as follows:

## AFFIANT BACKGROUND

1. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") and have been so employed since 2009. I am a law enforcement officer of the United States, within the meaning of Title 18, United States Code, who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 111, and Title 8, United States Code, Section 1325.

2. I am assigned to the Everett and Bellingham Resident Agencies of the FBI's Seattle Field Office, where I am assigned to Violent Crime investigations occurring in Snohomish, Skagit, Island, Whatcom, and San Juan Counties, which are situated in the Western District of Washington.

3. During my career as an FBI Special Agent, I have served as the case agent on numerous violent crime investigations, gang investigations, narcotics investigations,

Complaint - 2
*United States v. Lindsay Moffatt* /MJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and trans-national organized crime investigations. My experience in violent crimes includes prior investigations of Assault on a Federal Officer. I have participated in all aspects of these investigations, including conducting surveillance, collecting evidence, undercover operations, identifying victims, interviewing suspects, and executing arrest and search warrants.

4. The information contained in this affidavit consists of my personal knowledge gained through this investigation, information provided by other law enforcement officers involved in this investigation, information provided by witnesses and others with knowledge of the relevant events and circumstances, information gleaned from my review of evidence, and my training and experience. Because this affidavit is offered for the limited purpose of establishing probable cause, I list only those facts that I believe are necessary to support such a finding. I do not purport to list every fact known to me or others as a result of this investigation.

## INTRODUCTION

5. This Affidavit and warrant are being presented electronically pursuant to Federal Rules of Criminal Procedure 4.1 and 41(d)(3).

6. As set forth in this affidavit, there is probable cause to believe that LINDSAY MOFFATT violated Title 18 U.S.C. 111(a), Assault on a Federal Officer, and Title 8 U.S.C. 1325(a)(1) during an incident that occurred at Peace Arch State Park in Blaine, Washington, during the evening hours of December 30, 2025.

## THE INVESTIGATION

7. On December 31, 2025, FBI Bellingham was notified that an Agent employed by United States Border Patrol (USBP) was kicked in the face during an immigration arrest the night before, on December 30, 2025. I was provided with a brief summary of the incident, which outlined how a Canadian citizen, LINDSAY MOFFATT, attempted to enter the United States through the Peace Arch Port of Entry in Blaine, Washington. MOFFATT was denied entry after USBP learned she possessed of a marijuana-related vape pen. I understood MOFFATT subsequently entered the United States unlawfully through Peace Arch State Park in Blaine, Washington, which is situated

Complaint - 3
*United States v. Lindsay Moffatt* /MJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

in Whatcom County. The initial information outlined how, during the arrest, MOFFATT kicked one of the arresting Agents, designated in this affidavit as "Victim 1," in the face. Based on my training and experience, I recognized this as a potential violation of Assault on a Federal Officer, so I traveled to USBP's offices in Blaine, Washington, to investigate.

8. Upon arrival, I spoke to several USBP Agents about the lawful ports of entry into the United States from Canada. After speaking with several Agents, including Victim 1, I learned the December 30 incident involving MOFFATT occurred at the Peace Arch State Park in Blaine, Washington. I am aware that the United States has a lawful Port of Entry in Blaine, which all visitors, including Canadian citizens, must process through before being allowed into the United States. This Port of Entry is not located inside of Peace Arch State Park.

9. I also learned there is a separate physical area known as the Peace Arch. The Peace Arch is situated as a center island between the northbound and southbound lanes of Interstate 5. People from United States and Canada are permitted to visit with each other on the lawn at the Peace Arch. However, Peace Arch State Park is situated on the eastbound side of northbound Interstate 5; it is not connected to the Peace Arch. No crossings between the United States and Canada may occur at Peace Arch State Park. USBP regularly assigns two patrol Agents to the parking lot at Peace Arch State Park for routine border enforcement duties.

10. I reviewed online maps of Peace Arch State Park. I noticed that the northern edge of the park comprises the U.S.-Canada border. A residential street in Surrey, British Columbia, Canada, is labeled "0 Mile," which sits just north of Peace Arch State Park.

11. I was introduced to Victim 1, who I interviewed. Victim 1 explained she is a First-Line Supervisory Border Patrol Agent (SBPA) with USBP who was working her shift the night of December 30, 2025. During her shift, Victim 1 heard radio traffic from other USBP Agents at Peace Arch State Park. Another Agent's radio traffic indicated a woman, later identified as MOFFATT, was attempting to cross into the United States

Complaint - 4
United States v. Lindsay Moffatt /MJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

from Canada by walking across the marked international border that runs along the north side of Peace Arch State Park. Victim 1 knew the park was closed at that hour. Victim 1 responded to the scene after hearing an Agent ask for back-up because MOFFATT was getting out of control. Victim 1 explained to me how Peace Arch State Park has a deep culvert with signage reading "DO NOT CROSS" at multiple points along the border. Victim 1 also explained to me that Peace Arch State Park is equipped with concrete barriers, situated alongside the signage, to further deter unlawful crossings.

12.     During the evening of December 30, 2025, Victim 1 arrived at Peace Arch State Park and encountered MOFFATT. Victim 1 was in her full USBP uniform with patches displaying "USBP Border Patrol" along the front lapel and sleeves. Victim 1 was also wearing a uniform jacket that is similarly labeled with USBP markings. Victim 1 arrived on scene in her marked USBP vehicle.

13.     Upon arrival, Victim 1 noticed two males standing in the parking lot at Peace Arch State Park. Victim 1 saw another USBP Agent in the parking lot. Victim 1 understood the Agents were yelling to a woman (MOFFATT) about a dog. Victim 1 hoped to redirect MOFFATT to the official Port of Entry so that MOFFATT could lawfully enter the United States, which appeared to be MOFFATT'S goal. Victim 1 told the two men to leave since the park was closed. Victim 1 and other USBP officers shouted instructions to MOFFATT. They instructed MOFFATT not to cross onto the grass since she was not allowed there. Victim 1 watched as MOFFATT used her phone and then walked around the cement barricades, crossing into the United States.

14.     Victim 1 estimated that she and other USBP officers provided repeated warnings to MOFFATT. Victim 1's statements included commands to stop walking in certain directions. MOFFATT responded to Victim 1 by screaming, "go fuck yourself." Victim 1 described MOFFATT'S demeanor as non-compliant. MOFFATT continued to yell obscenities at Victim 1 and other Agents when they attempted to interact with her. At one point, Victim 1 told MOFFATT to stop shouting so they could speak calmy, but MOFFATT carried on with obscenities.

Complaint - 5
United States v. Lindsay Moffatt /MJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

15. Once MOFFATT crossed the concrete barrier, Victim 1 and other Agents approached MOFFATT to arrest her for the civil immigration violation. Victim 1 took MOFFATT'S right arm and placed it behind MOFFATT'S back. Victim 1 felt MOFFATT'S body tense up to resist arrest. Victim 1 provided MOFFATT with repeated instructions on where to place her hands, but MOFFATT would not listen. MOFFATT'S right hand was secured with a handcuff.

16. Victim 1 described MOFFATT'S demeanor as "hysterical." MOFFATT was repeatedly screaming obscenities and insults at Victim 1 and other Agents. MOFFATT resisted arrest to the point that she fell to the ground. MOFFATT called Victim 1 multiple gender-specific slurs and insults, including referring to Victim 1 as a "cunt." MOFFATT told Victim 1 and other Agents she hoped they would "die a painful death." Victim 1 and other Agents moved MOFFATT'S left hand into the other handcuff. After a struggle, MOFFATT was ultimately handcuffed to the rear by multiple Agents.

17. Victim 1 told MOFFATT she would be transported in a nearby patrol car. MOFFATT responded that she was not getting into any car. Victim 1 informed MOFFATT that Agents would carry MOFFATT to the patrol car if she refused to walk. Victim 1 and another Agent picked up MOFFATT and began to carry her across the lawn and towards a patrol car.

18. While carrying MOFFATT, Victim 1 suddenly felt MOFFATT "go limp," which Victim 1 recognized as another sign of MOFFATT'S non-compliance. Due to MOFFATT'S sudden shift in weight, Agents were unable to maintain a steady grip on her. MOFFATT fell to the ground and landed on her side. Agents, including Victim 1, moved alongside MOFFATT to regain control of her. MOFFATT, who was on the ground and still handcuffed, began rolling around while continuing to shout obscenities. MOFFATT began kicking her legs. While moving her legs in a kicking motion, MOFFATT'S foot struck Victim 1 in the chin. MOFFATT'S foot continued up Victim 1's face, which pushed Victim 1's glasses forcibly onto the bridge of her nose and moved them askew on her face. During the interview, Victim 1 pointed to the bridge of her nose to show me the resulting red mark caused by her glasses.

Complaint - 6
United States v. Lindsay Moffatt /MJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

19. Victim 1 alerted other Agents that MOFFATT had just hit her. MOFFATT was continuously agitated and continued screaming. Agents stood MOFFATT up and walked her to the patrol car. Victim 1 noticed MOFFATT had urinated and defecated onto herself. MOFFATT was transported to a USBP facility for processing.

20. After interviewing Victim 1, I reviewed CCTV footage and some photos, which were sent to FBI by USBP.

21. First, I reviewed photos of Victim 1, which USBP took immediately after the incident. I noticed Victim 1's chin was red. I had similarly observed this during Victim 1's interview. Victim 1 told me that MOFFATT'S kick also displaced Victim's glasses and pressed them forcefully onto the bridge of her nose. When I interviewed Victim 1, I noticed a red mark on the bridge of Victim's 1's nose; this red mark was not as prominent in the initial photos. During the interview, I noticed Victim 1's right red eye was red. When I asked Victim 1 about this, she said MOFFATT did not come into contact with her eye. While reviewing the photos, I noticed Victim 1 was in full USBP uniform. Victim 1 was plainly identifiable as a federal officer based on her uniform and her department's patches.

22. Next, I reviewed CCTV footage of the incident, which contains video but no audio. The footage is approximately four minutes in length. The CCTV camera is equipped with thermal-detecting infrared or FLIR capabilities, meaning people's silhouettes show up in a bright white contrast compared to the surrounding darkness. Based on my training and experience, I know this type of CCTV equipment makes it easier to monitor areas in the darkness.

23. The CCTV footage generally matched Victim 1's description of events. I observed Victim 1 and three other Agents approach MOFFATT. MOFFATT was standing next to signage I later learned read "DO NOT CROSS." MOFFATT was also standing next to her dog. As Agents interacted with MOFFATT, she began moving her arms, pointing, and gesturing. Victim 1 grabbed MOFFATT'S right wrist, then MOFFATT pulled her arm away. Victim 1 and other Agents started directing MOFFATT'S body, in an apparent attempt to arrest her. MOFFATT continued to resist,

Complaint - 7
United States v. Lindsay Moffatt /MJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and she fell to the ground. It took all four Agents to get MOFFATT restrained on the ground and into handcuffs. Once restrained, Agents move MOFFATT into a seated position on the ground. Victim 1 continues to interact with MOFFATT, who is seated on the ground.

24. About three minutes into the footage, Victim 1 and another Agent stand MOFFATT up and began to walk alongside her while holding MOFFATT at the elbows. MOFFATT sometimes moved her legs to walk on her own, but at other times appeared to stop moving her legs. While standing, MOFFATT abruptly moved her legs in a kicking motion, then she suddenly fell to the ground. On the ground, MOFFATT began flailing around and kicking her legs. MOFFATT'S leg struck Victim 1 and possibly struck another Agent. Victim 1 and two other Agents continued to try and further restrain MOFFATT, who appeared to me to be combative despite being restrained in handcuffs. About a minute later, MOFFATT was led to a standing position, then walked off camera alongside two Agents.

25. Shortly after reviewing the CCTV, I traveled from the USBP office to Peace Arch State Park. I was accompanied by a USBP Agent and a Special Agent with Homeland Security Investigations (HSI). Peace Arch State Park looks like an ordinary park. It has a parking lot, a grassy area, a children's playground, and some out buildings.

26. I learned the U.S.-Canada border runs along the northern edge of the park. I walked over to the northern edge of the park, where I observed a deep culvert that runs the length of the grass. The culvert has some narrow grassy walkways to function as bridges over the culvert. Those contain concrete barricades maybe two or three feet in height.

27. In addition, each grassy walkway spanning the culvert contains multiple signs. One of these signs is mounted to a pole in the grass. Another is sandwich-board style signage. Standing on the south side, or the U.S.-side, I saw the pole-mounted sign read "CROSSING" with an arrow separating a Canadian flag from a U.S. flag. Standing on the north side, or the Canada-side, I saw the pole-mounted sign read "DO NOT CROSS – International Boundary." The sign has an arrow separating a U.S. flag from a

Complaint - 8
United States v. Lindsay Moffatt /MJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Canadian flag. At the bottom, the sign reads, "Violators will be arrested and charged with 8 USC 1325". The sandwich-board style signage contains text only visible on the northern/Canadian side. It reads: "NOTICE.  Pursuant to 19 USC 1459, all persons seeking to enter the United States from Canada must be inspected by Customs officers. To enter the United States, present yourself for inspection at the Peace Arch Port of Entry.  Failure to comply may result in criminal and civil penalties including imprisonment." I photographed these signs and other elements of the park. Notably, both sets of signs are visible in the CCTV video described in paragraphs 22-24.

28. After that, I traveled to USBP's Annex in Blaine, where MOFFAT was detained and in USBP's custody. I interviewed MOFFATT in the USBP facility alongside an HSI Special Agent. MOFFATT provided a post-Miranda statement. MOFFATT explained she intended to enter the United States to meet with her fiancé, who resides in Washington. MOFFATT wore a winter coat that she normally does not wear, then she boarded a bus to travel to the Port of Entry in Blaine. While on the bus, MOFFATT discovered a "weed vape pen" in her coat pocket, which she didn't realize was there before departing. Upon arrival to the Peace Arch Port of Entry, MOFFATT declared the vape pen to Customs upon inspection. MOFFATT was denied entry into the United States due to the vape pen. MOFFATT and her fiancé have a dog together. The dog splits time between both residences. MOFFATT explained this to Customs, asking where she could retrieve her dog. MOFFATT was instructed to meet her fiancé at the Peace Arch if she wished to do so.

29. Approximately six to eight hours later, MOFFATT took an Uber to the vicinity of Peace Arch State Park, along 0 Mile Road in Surrey, British Columbia, Canada. MOFFATT'S fiancé and their dog were in the parking lot at Peace Arch State Park. MOFFATT was approached by USBP and told not to enter the grassy area of the park. MOFFATT explained she had to get her dog from her fiancé. MOFFATT'S fiancé told her to call the dog over since MOFFATT was unable to cross. MOFFATT did that, and she was able to retrieve her dog.

Complaint - 9
*United States v. Lindsay Moffatt* /MJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

30.     MOFFATT'S description of events was inconsistent with my review of the CCTV footage. MOFFATT explained she contacted her fiancé to meet her at "Peace Arch Park." She indicated she understood they could visit as long as they both had their passports. MOFFATT explained her fiancé was approached by USBP; her fiancé explained they were trying to exchange the dog. USBP told the fiancé it was okay, but the Agents were still very hostile and repeatedly yelling "Don't enter on the grass!" This confused MOFFATT since she was at "Peace Arch Park." MOFFATT stated she didn't realize you can't visit at the park late at night or else "they (USBP) really flip out." MOFFATT heard USBP instruct her not to move any closer; meanwhile, her fiancé told her to just call the dog over, which she did. MOFFATT had several bags with her and a chair. MOFFATT exited the grass and moved through the grassy walkway and down the road. MOFFATT stated that while attempting to use her phone to call an Uber Pet, MOFFATT moved down the road to try for better cell reception. Multiple USBP Agents moved onto the grass. According to MOFFATT, a female officer (Victim 1) approached MOFFATT and started screaming, instructing MOFFATT not to come back onto the grass. MOFFATT repeatedly responded to Victim 1, stating she wasn't trying to cross into the park.

31.     MOFFATT stated she sat on the concrete barrier, but Victim 1 pulled MOFFATT by her shirt and threw MOFFATT on the ground. MOFFATT's dog was also "flung." MOFFATT started screaming that she was trying to call an Uber, but Victim 1 would not listen. MOFFATT was escorted to her feet and walked to a patrol vehicle. MOFFATT heard Victim 1 say that MOFFATT hit her, which was impossible since MOFFATT was handcuffed. MOFFATT repeatedly stated that she couldn't have hit Victim 1 because MOFFATT was handcuffed.

32.     When describing her interactions with Victim 1, MOFFATT started crying. MOFFATT said she typically does not get along well with a younger, female officer, specifically stating they are not "my cup of tea." Referencing young female officers, MOFFATT stated, "they don't do really well with me for some reason, I don't know why." MOFFATT continued explaining how they "make me very nervous. They are too

Complaint - 10
United States v. Lindsay Moffatt /MJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

young, they are too fresh, and they are too hungry, and they do stupid stuff like this and ruin people's lives who aren't trying to do anything wrong." MOFFATT was scared of Victim 1 because she recognized Victim 1 as a young, female officer with something to prove MOFFATT heard Victim 1 say "she hit me," which she believed was a lie since she was pinned on the ground. She told a male officer "I didn't hit her" and "I was never trying to come back in here."

33. During her arrest, MOFFATT described herself terrified, and thought her body was flailing while she was on ground. MOFFATT said she was trying to do anything to get out of that position, referencing her arrest. MOFFATT said she runs a business and has never been in trouble before. Prior to interviewing MOFFATT, I reviewed her criminal history from Canada. Those records showed she was arrested for Threats in 2011, and she had two other criminal charges for Failure to Comply with a Probation order from 2011 and 2012. MOFFATT stated that she was so scared that she was "covered in shit and piss." MOFFATT wanted to talk herself out of that situation so she could avoid being arrested and get back to her life.

34. MOFFATT admitted she plainly recognized the USBP Agents as federal officers. MOFFATT could see their uniforms. MOFFATT also stated, "I understand these officers were doing their job."

35. Upon more direct questioning, MOFFATT acknowledged that she probably yelled obscenities at the Agents, stating she probably told them, "Fuck you." MOFFATT also stated, "I mean, I got hurt. I'm sure they got a bruise or two." MOFFATT denied intentionally kicking anyone, but when told there was video that showed her kicking, she said it was possible that she did kick someone. MOFFATT repeatedly stated that she did not intentionally strike anyone.

\\
\\
\\

Complaint - 11
United States v. Lindsay Moffatt /MJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## CONCLUSION

Based on the above facts, I respectfully submit that there is probable cause to believe that LINSDAY MOFFATT did knowingly and intentionally forcibly assault, resist, oppose, impede, intimidate, and interfere with Victim 1, a USBP Agent, during the course of that Agent's duties, in violation of Title 18, United States Code, Section 111(a), and, being an alien, a native and citizen of Canada, did knowingly enter the United States at a time and place other than as designated by immigration officers, in violation of Title 8, United States Code, Section 1325(a)(1).

Sara K. Blond, Complainant
Special Agent
Federal Bureau of Investigation

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe the Defendant committed the offense set forth in the Complaint.

Dated this 1st day of January 2026.

Grady J. Leupold
United States Magistrate Judge

Complaint - 12
United States v. Lindsay Moffatt /MJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970